**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** _____ |
| | : | |
| **v.** | : | |
| | : | |
| **CRÉDIT AGRICOLE CORPORATE** | : | |
| **AND INVESTMENT BANK,** | : | |
| | : | |
| **Defendant.** | : | |

**DEFERRED PROSECUTION AGREEMENT**

Defendant Crédit Agricole Corporate & Investment Bank (the "Company"), by its

undersigned representatives, pursuant to authority granted by the Company's Board of Directors,

and the United States Attorney's Office for the District of Columbia (the "Office"), enter into

this deferred prosecution agreement (the "Agreement"), the terms and conditions of which are as

follows:

**Criminal Information and Acceptance of Responsibility**

1.      The Company acknowledges and agrees that the Office will file the attached

one-count criminal Information in the United States District Court for the District of Columbia

charging the Company with knowingly and willfully conspiring to defraud the United States and

to violate the International Emergency Economic Powers Act ("IEEPA") and the Trading With

the Enemy Act ("TWEA"), in violation of Title 18, United States Code, Section 371.  In so

doing, the Company: (a) knowingly waives its right to indictment on this charge, as well as all

rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution,

Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and

(b) knowingly waives for purposes of this Agreement and any charges by the United States

arising out of the conduct described in the attached Factual Statement any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Columbia.

2.      The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Factual Statement attached hereto as Attachment A and incorporated by reference into this Agreement, and that the allegations described in the Information and the facts described in Attachment A are true and accurate.  Should the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the Factual Statement in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Factual Statement at any such proceeding.

## Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the Information is filed and ending three (3) years from that date (the "Term").  The Company agrees, however, that, in the event the Office determines, in its sole discretion, that the Company has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Office, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Office's right to proceed as provided in Paragraphs 15 through 19 below.  Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Paragraph 12, for an equivalent period.  Conversely, in the event the Office finds, in its sole discretion, that there exists a change

in circumstances sufficient to eliminate the need for the reporting requirement in Paragraph 12, and that the other provisions of this Agreement have been satisfied, the Term of the Agreement may be terminated early.

### Relevant Considerations

4.      The Office enters into this Agreement based on the individual facts and circumstances presented by this case and the Company.  Among the factors considered were the following: (a) the Company's willingness to acknowledge and accept responsibility for the actions of its officers, directors, employees, and agents as charged in the Information and as set forth in the Factual Statement; (b) the Company's extensive remedial actions taken to date, which are described in the Factual Statement; (c) the Company's agreement to continue to enhance its sanctions compliance program; (d) the Company's agreement to continue to cooperate with the Office in any ongoing investigation of the conduct of the Company and its current or former directors, officers, employees, agents, and consultants as provided in Paragraph 5 below, (e) the Company's willingness to settle any and all civil and criminal claims currently held by the Office for any act within the scope of the Factual Statement; (f) the Company's historical cooperation with the Office, including conducting an extensive internal investigation, voluntarily making U.S. and foreign employees available for interviews, and collecting, analyzing, and organizing voluminous evidence and information for the Office; and (g) the Company's agreement to engage in prospective cooperation efforts, to include, among other things, the Company's continued remediation efforts and commitment to future compliance enhancements as described in paragraphs 10 and 11.

## **Future Cooperation and Disclosure Requirements**

5.      The Company shall cooperate fully with the Office in any and all matters relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by this Office, at any time during the Term of this Agreement, subject to applicable laws and regulations, and the attorney-client privilege and attorney work product doctrine, until the date upon which all investigations and prosecutions arising out of such conduct are concluded, whether or not those investigations and prosecutions are concluded within the term specified in Paragraph 3.  At the request of the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Company, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by this Office, at any time during the Term of this Agreement, subject to applicable laws and regulations and the attorney-client privilege and attorney work product doctrine.  The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.      The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or attorney work product doctrine, and subject to applicable laws and regulations, with respect to its activities occurring in whole or in part during the term of this Agreement, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, related to investigations by the

4

Department of Justice known to the Company or about which the Office may inquire.  This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Office, upon request, any document, record or other tangible evidence about which the Office may inquire of the Company.

b.      Upon request of the Office, the Company shall designate knowledgeable employees, agents or attorneys to provide to the Office the information and materials described in Paragraph 5(a) above on behalf of the Company.  It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c.      Upon request of the Office, the Company shall, at its cost, use its best efforts to make available for interviews or testimony, as requested by the Office, present or former officers, directors, employees, agents and consultants of the Company.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.      Upon request of the Office, the Company shall use its good faith efforts to identify additional witnesses who, to the Company's knowledge, may have material information concerning this investigation and notify the Office.

e.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable laws and regulations, to other governmental

authorities, including United States authorities and those of a foreign government, of such materials as the Office, in its sole discretion, shall deem appropriate.

f.     Upon request of the Office, the Company shall provide information, materials, and testimony as necessary or requested to identify or to establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or judicial proceeding.

6.     In addition to the obligations in Paragraph 5, during the Term of the Agreement, should the Company learn of credible evidence or allegations of any violation of the International Emergency Economic Powers Act by the Company, the Company shall promptly report such evidence or allegations to the Office.

7.      Nothing in this Agreement shall be construed to require the Company to produce any documents, records or tangible evidence, or other information that are protected by the attorney-client privilege, attorney work product doctrine, or that is prohibited from disclosure by French or other applicable laws or by the rules and regulations of banking regulators regarding the disclosure of confidential supervisory information.

## Forfeiture

8.     As a result of the conduct described in the Information and the Factual Statement, the Company agrees to make a payment in the amount of $312 million ("the Forfeiture Amount").  The Forfeiture Amount consists of a $156 million payment to the Office and a $156 million payment to the New York County District Attorney's Office ("DANY").[1]

---

[1] Pursuant to a Deferred Prosecution Agreement that the Company will enter into with DANY, the Company has agreed to pay separately $156 million to DANY for violations of New York State Penal Law Section 175.10.

a.      The Company agrees that the facts contained in the Information and the Factual Statement establish that the Forfeiture Amount is subject to civil forfeiture to the United States and that this Agreement, the Information, and the Factual Statement shall be attached and incorporated into a civil forfeiture complaint (the "Civil Forfeiture Complaint"), a copy of which is attached hereto as Attachment C, that will be filed against the $156 million payment to the Office.  The Company further agrees that the funds used to pay the Forfeiture Amount were funds involved in transactions which promoted the carrying on of the conspiracy to violate IEEPA.  Specifically, the funds used to pay the Forfeiture Amount are a portion of the Company's assets which facilitated the $312 million in illegal transactions.  The Company agrees that there is a substantial connection between the funds used to pay the Forfeiture Amount and the offense alleged in the Civil Forfeiture Complaint. The Company agrees to sign any documents necessary to effectuate forfeiture of the Forfeiture Amount, including a stipulation as to the involvement of the Forfeiture Amount in the transactions in violation of IEEPA.

b.      By this Agreement, the Company expressly waives all constitutional and statutory challenges in any manner to the Civil Forfeiture Complaint carried out in accordance with this Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.  The Company also waives service of the Civil Forfeiture Complaint and *in rem* jurisdiction as to the Forfeiture Amount. The Company further agrees to the entry of a Final Order of Forfeiture against the Forfeiture Amount.

c.      The Company shall release any and all claims it may have to the Forfeiture Amount and execute such documents as necessary to accomplish the forfeiture of the funds.  The Company agrees that it will not file a claim with the Court or otherwise contest the

civil forfeiture of the Forfeiture Amount and will not assist a third party in asserting any claim to the Forfeiture Amount.  The Company certifies that the funds used to pay the Forfeiture Amount are not the subject of any lien, security agreement, or other encumbrance. Transferring encumbered funds or failing to pass clean title to these funds in any way will be considered a breach of this agreement.

d.      The Company agrees that the Forfeiture Amount shall be treated as a penalty paid to the United States government for all purposes, including tax purposes.  The Company agrees that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, local, or foreign tax for any fine or forfeiture paid pursuant to this Agreement.

e.      The Company shall transfer the Forfeiture Amount to the United States within five (5) business days after executing this Agreement (or as otherwise directed by the Office following such period) and shall pay any associated transfer fees.  Such payment shall be made pursuant to wire instructions provided by the Office.  If the Company fails to timely make the payment required under this paragraph, interest (at the rate specified by 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment, unless the Office, in its sole discretion, chooses to reinstate prosecution pursuant to Paragraphs 15 through 19, below.

f.      The Forfeiture Amount paid is final and shall not be refunded should the Government later determine that the Company has breached this Agreement and commences a prosecution against the Company.  In the event of a breach of this Agreement and subsequent prosecution, the Government may pursue additional civil and criminal forfeiture in excess of the Forfeiture Amount.  The Government agrees that in the event of a subsequent breach and

prosecution, it will recommend to the Court that the amounts paid pursuant to this Agreement be offset against whatever forfeiture the Court shall impose as part of its judgment.  The Company understands that such a recommendation will not be binding on the Court.

## Conditional Release from Liability

9.      Subject to Paragraphs 15 through 19, the Office agrees, except as provided herein, that it will not bring any criminal or civil case against the Company or any parents, subsidiaries, affiliates, predecessors, successors or assigns of the Company relating to any of the conduct described in the Factual Statement, attached hereto as Attachment A, or the criminal information filed pursuant to this Agreement, or disclosed by the Company or its subsidiaries or affiliates to the Office during the course of this investigation prior to the date on which this Agreement was signed.  The Office, however, may use any information related to the conduct described in the attached Factual Statement against the Company:  (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

a.      This Agreement does not provide any protection against prosecution for any future conduct by the Company.

b.      This Agreement does not provide any protection against prosecution for conduct that is not referenced in Attachment A or disclosed by the Company or its subsidiaries or affiliates to the Department during the course of this investigation prior to the date on which this Agreement was signed.

c.     This Agreement does not provide any protection against prosecution of any present or former officer, director, employee, individual shareholder, agent, consultant, contractor, or subcontractor of the Company for any violations committed by them.

**Corporate Compliance Program**

10.     The Company represents that it has implemented and will continue to implement throughout the Term of this Agreement, a compliance and ethics program designed to prevent and detect violations of Title 50, United States Code, Section 1705, and the regulations issued thereunder, throughout its operations, including those of its affiliates, agents, and joint ventures the Company can control whose operations include managing client accounts for clients subject to the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") sanctions, processing payments denominated in United States Dollars, and directly or indirectly supervising such operations.

11.     In order to address any deficiencies in its sanctions compliance programs, the Company represents that it shall:

a.     Continue to apply the OFAC sanctions list to United States Dollar ("USD") transactions, the acceptance of customers, and all USD cross-border Society for Worldwide Interbank Financial Telecommunications ("SWIFT") incoming and outgoing messages involving payment instructions or electronic transfer of funds;

b.     Except as otherwise permitted by United States law, not knowingly undertake any USD cross-border electronic funds transfer or any other USD transaction for, on behalf of, or in relation to any person or entity resident or operating in, or the governments of,

Iran, North Korea, the Sudan (except for those regions and activities exempted from the United States embargo by Executive Order No. 13412), Syria, Cuba, or Burma;

        c.      Continue to complete Financial Economic Crime sanctions training, covering U.S., U.N., and E.U. sanctions and trade control laws for all employees (1) involved in the processing or investigation of USD payments and all employees and officers who directly or indirectly are supervising these employees, (2) involved in execution of USD denominated securities trading orders and all employees and officers who directly or indirectly are supervising these employees; and (3) involved in transactions or business activities involving any nation or entity subject to U.S., E.U., or U.N. sanctions, including the execution of cross-border payments;

        d.      Continue to apply its written policy requiring the use of SWIFT Message Type ("MT") MT 202COV bank-to-bank payment message where appropriate under SWIFT Guidelines, and by the date of the first report required by Paragraph 12, certify continuing application of that policy;

        e.      Continue to apply and implement compliance procedures and training designed to ensure that the Company's compliance officer in charge of sanctions is made aware in a timely manner of any known requests or attempts by any entity (including, but not limited to, the Company's customers, financial institutions, companies, organizations, groups, or persons) to withhold or alter its name or other identifying information where the request or attempt appears to be related to circumventing or evading U.S. sanctions laws. The Company's Head of Compliance, or his or her designee, shall report to the Office in a timely manner, the name and contact information, if available to the Company, of any entity that makes such a request, subject to any applicable laws, including any data privacy or bank secrecy laws;

    f.  Maintain the electronic database of SWIFT MT payment messages and all documents and materials produced by the Company to the United States as part of this investigation relating to USD payments processed during the period from August 2003 through September 2008 in electronic format during the period of this Agreement, including any extensions;

    g.  Abide by any and all requirements of the Settlement Agreement, dated October 19, 2015, by and between OFAC and the Company regarding remedial measures or other required actions related to this matter;

    h.  Abide by any and all requirements of the Cease and Desist Order, dated October 19, 2015, by and between the Board of Governors of the Federal Reserve System ("Federal Reserve"), and the Company regarding measures or other required actions related to this matter;

    i.  Abide by and all requirements of the Consent Order, dated October 19, 2015, by and between the New York Department of Financial Services ("DFS") and the Company regarding remedial measures or other required actions related to this matter;

    j.  The Company shall share with the Office any reports, disclosures, or information that the Company, by terms of the Settlement Agreement, the Cease and Desist order and Consent Order, is required to provide to OFAC, the Federal Reserve, and DFS, subject to receiving the required approvals and consents from OFAC, the Federal Reserve, or DFS.  The Company further agrees that any compliance consultant or monitor imposed by the Federal Reserve or DFS shall, at the Company's own expense, submit to the Office any report that it

submits to the Federal Reserve or DFS, subject to receiving the required approvals and consents from the Federal Reserve or DFS; and

k.      Notify the Office of any criminal, civil, administrative or regulatory investigation, inquiry, or action, of the Company or its current directors, officers, employees, consultants, representatives, and agents related to the Company's compliance with United States sanctions laws, to the extent permitted by the agency conducting the investigation or action and applicable laws.

### Prospective Corporate Compliance Reporting
### Throughout Duration of Term of Agreement

12.      The Company agrees that it will report to the Office every 90 days during the term of the Agreement regarding remediation and implementation of the compliance measures described in Paragraphs 10 and 11.  Such reports must include specific and detailed accounts of the Company's sanctions compliance improvements.  At the end of the term of the Agreement, the Company's Head of Compliance must certify via his or her signature that the Company's sanctions compliance improvements have been completed.

### Deferred Prosecution

13.      In consideration of: (a) the past and future cooperation of the Company described in Paragraphs 5 and 6 above; (b) the Company's forfeiture of $312 million; and (c) the Company's implementation and maintenance of remedial measures as described in Paragraphs 10 and 11 above, the Office agree that any prosecution of the Company, or any parents, subsidiaries, affiliates, predecessors, successors or assigns of the Company, for the conduct set forth in the attached Factual Statement, and for the conduct that the Company

disclosed to the Office prior to the signing of this Agreement, be and hereby is deferred for the Term of this Agreement.

14.     The Office further agrees that so long as the Company fully complies with all of its obligations under this Agreement, the Office will not continue the criminal prosecution against the Company, or any parents, subsidiaries, affiliates, predecessors, successors or assigns of the Company, described in Paragraph 1, or proceed by separate indictment of or otherwise pursue criminal or civil charges against the Company, or any parents, subsidiaries, affiliates, predecessors, successors or assigns of the Company, in relation to the conduct described in this Agreement and Attachment A, or disclosed by the Company to the Office during the course of this investigation prior to the date on which this Agreement was signed and, at the conclusion of the Term, this Agreement shall expire.  Within thirty (30) days of the Agreement's expiration, the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agree not to file charges in the future against the Company, or any parents, subsidiaries, affiliates, predecessors, successors or assigns of the Company, based on the conduct described in this Agreement and Attachment A, or disclosed by the Company or its subsidiaries or affiliates to the Office during the course of this investigation prior to the date on which this Agreement was signed.

**Breach of the Agreement**

15.     If, during the Term of this Agreement, the Company (a) commits any felony under United States federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program as set forth in

Paragraphs 10 and 11 of this Agreement; or (e) otherwise fails specifically to perform or to fulfill completely each of the Company's obligations under the Agreement, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Office in the United States District Court for the District of Columbia or any other appropriate venue.   Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Office's sole discretion.   Any such prosecution may be premised on information provided by the Company.   Any such prosecution relating to the conduct described in the attached Factual Statement or relating to conduct known to the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year.   Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

16.    In the event the Office determines that the Company has breached this Agreement, the Office agrees to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach.   Within thirty (30) days of receipt of such notice, the Company shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to

address and remediate the situation, which explanation the Office shall consider in determining whether to pursue prosecution of the Company.

17.     In the event that the Office determines that the Company has breached this Agreement:  (a) all statements made by or on behalf of the Company to the Office or to the Court, including the attached Factual Statement, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Office.

18.     The Company acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment.  The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

19.     No later than 90 days prior to the expiration of the period of deferred prosecution specified in this Agreement, the Company, by the Head of Compliance, will certify to the Office that the Company has met its disclosure obligations pursuant to Paragraphs 5 and 6 of this Agreement.  Such certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

## Sale or Merger of Company

20.     Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, the Company agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

## Public Statements by Company

21.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Factual Statement.  Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 15 through 19 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Factual

Statement will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Office.  If the Office determines that a public statement by any such person contradicts in whole or in part a statement contained in the Factual Statement, the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Factual Statement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Factual Statement.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual or by such individuals against the Company, unless such individual is speaking on behalf of the Company.

22.     The Company agrees that if it, its parent company, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Office and the Company; and (b) whether the Office has any objection to the release.

23.     The Office agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation.  By agreeing to provide this information to such authorities, the

Office is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such authorities.

## Limitations on Binding Effect of Agreement

24.     This Agreement is binding on the Company and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.  This agreement does not bind any affiliates or subsidiaries of the Company, other than those that are parties to this Agreement, but is binding on the Company itself.  To the extent the Company's compliance with this agreement requires it, the Company agrees to ensure that its wholly-owned subsidiaries, and any successors and assigns, comply with the requirements and obligations set forth in this agreement, to the full extent permissible under locally applicable laws and regulations, and the instructions of local regulatory agencies.

## Notice

25.     Any notice to the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Channing D. Phillips, United States Attorney for the District of Columbia, 555 4th Street NW, Washington, DC 20530.  Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Bruno Fontaine, General Counsel, Crédit Agricole Corporate &

Investment Bank, 9 Quai du Président Paul Doumer, 92920 Paris La Défense Cedex, France. Notice shall be effective upon actual receipt by the Office or the Company.

**Complete Agreement**

26.     This Agreement sets forth all the terms of the agreement between the Company and the Office.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR CRÉDIT AGRICOLE CORPORATE & INVESTMENT BANK:**

Date: _____                    By:     _____
                                               Bruno Fontaine
                                               Crédit Agricole Corporate & Investment Bank

Date: _____                    By:     _____
                                               Keith D. Krakaur
                                               Jamie L. Boucher
                                               Ryan D. Junck
                                               Skadden, Arps, Slate, Meagher & Flom LLP

**FOR THE UNITED STATES ATTORNEY'S OFFICE:**

                                               CHANNING D. PHILLIPS
                                               UNITED STATES ATTORNEY

Date: _____                    BY:     _____
                                               Matt Graves
                                               Maia L. Miller
                                               Assistant United States Attorneys

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Crédit Agricole Corporate & Investment Bank (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the General Counsel for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: _____

CRÉDIT AGRICOLE CORPORATE & INVESTMENT BANK

By:  _____
       Bruno Fontaine
       General Counsel

**CERTIFICATE OF COUNSEL**

I am counsel for Crédit Agricole Corporate & Investment Bank (the "Company") in the matter covered by this Agreement.  In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company.  Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the General Counsel of the Company.  I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement.  To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: _____

By: _____
      Keith D. Krakaur
      Jamie L. Boucher
      Ryan D. Junck
      Skadden, Arps, Slate, Meagher & Flom LLP
      Counsel for Crédit Agricole Corporate & Investment Bank